IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TERESA MAXSON,                      )
                                    )
                 Plaintiff,         )
                                    )
vs.                                 )        Case No. 07-4076-SAC
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of                     )
Social Security,                    )
                                    )
                 Defendant.         )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties and has been referred to this court for a recommendation
and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  Ray
v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

     The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

     Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

     Plaintiff filed her application for disability insurance
benefits on August 7, 2002 (R. at 73, 398).  On July 13, 2004,
administrative law judge (ALJ) William Rima III issued a decision
that plaintiff had no severe impairments, and therefore was not
disabled (R. at 15-29).  Plaintiff sought judicial review of that

decision.  On August 8, 2005, defendant filed a motion to reverse
the decision of the ALJ and to remand for further hearing.
Specifically, the motion indicated that the ALJ would be directed
to give further consideration to plaintiff's fibromyalgia and
chronic fatigue syndrome and to re-evaluate the medical opinion
evidence of record (Maxson v. Barnhart, Case No. 05-2048-CM, Doc.
9).  On August 23, 2005, the court issued an order granting
defendant's motion, reversing the decision of the ALJ, and
remanding the case for further hearing ((Maxson v. Barnhart, Case
No. 05-2048-CM, Doc. 10).

On July 25, 2006, administrative law judge (ALJ) Guy E.
Taylor issued his decision (R. at 398-407).  Plaintiff alleged
that her disability began on September 8, 2000 (R. at 399).
Plaintiff meets the insured status requirements for disability
insurance through December 31, 2006 (R. at 399).  At step one,
the ALJ found that plaintiff had not engaged in substantial
gainful activity since her alleged onset date (R. at 400).  At
step two, the ALJ determined that plaintiff had the following
severe impairment: postural orthostatic tachycardia syndrome
(POTS).  The ALJ further determined that plaintiff's degenerative
disc disease of the lumbar spine was not severe.  The ALJ found
that plaintiff's Reynaud's syndrome is controlled with medication
and does not impose more than minimal limitations.  Finally, the
ALJ found that plaintiff's complaints of migraine headaches have

not been established by the evidence as a medically determinable impairment (R. at 403).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 403).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform her past work as a loan officer as generally performed (R. at 405).  In the alternative, at step five, the ALJ found that other jobs exist in significant numbers in the national economy which plaintiff can perform (R. at 405-406).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 406, 407).

**III.  Did the ALJ err in his analysis of the opinions of Dr. Lilly, a treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory

diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to

the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

In a letter dated December 23, 2002, Dr. Lilly prepared the following letter:

> This 25 year young white female has been
> followed in my Internal Medicine Clinic since
> October of 2001.  Her onset of illness began
> in January of 2000 with recurrent upper
> respiratory infections for the next 12
> months.  During that time, she developed
> Raynaud's phenomenon.  Then in April of 2001,
> she developed severe heart racing, chest
> pain, shortness of breath, swelling and
> severe fatigue.  She developed paresthesias
> and severe pain in her arms and legs.  She
> has had an extensive evaluation by multiple
> specialists including Cardiologists,
> Rheumatologists, and Neurologists.  Her

diagnoses have included Chronic Fatigue
Syndrome, probably due to post viral illness
with sequela of autonomic nervous dysfunction
and leading to chronic sinus tachycardia.
She is also felt to have Mitral Valve
Prolapse Syndrome, Raynaud's Phenomenon,
Fibromyalgia, and Peripheral Neuropathy.
She's been disabled and unable to work since
September 1, 2001.  She has severe
limitations due to her profound fatigue,
heart racing on minimal exertion,
intermittent swelling and chronic nerve pain
in arms and legs with partial numbness. Her
restrictions include no strenuous activity,
no lifting greater than 25 pounds, no
excessive walking over 1 block, no excessive
driving greater than 5 miles at a time.  She
cannot drive for prolonged periods as she is
unable to concentrate.  She does not have the
stamina to work for greater than 2 hours at a
time.  She is unable to walk or stand for
periods over 30 minutes.  She's been treated
with medication with minimal help.  There is
no improvement to be expected and the
Peripheral Neuropathy pain may worsen.

(R. at 247).

On January 26, 2004, Dr. Lilly prepared a medical source

statement-physical.  He opined that plaintiff could sit for 4

hours in an 8 hour day, stand for 2 hours and walk for 1 hour.

He indicated that she would need to lie down or recline for 2

hours during an 8 hour day.  He indicated that she could

frequently lift from 1-9 pounds and occasionally lift 10-19

pounds (R. at 301).  He found that she could occasionally

bend/stoop, climb, reach, balance and kneel, and could never

crouch.  He indicated that she could rarely or never be around

unprotected heights, and be exposed to marked changes in

temperature/humidity, dust, fumes, etc.  He indicated she could occasionally be around moving machines and could drive automatic equipment (R. at 302).

On May 13, 2004, Dr. Lilly filled out a medical assessment form.  He stated that plaintiff has neuropathy, Raynaud's phenomenon and Autonomic Dysfunction (R. at 326-327).  He opined that, if plaintiff had a sedentary job, her legs would need to be elevated 50% of the time in an 8 hour day.  He said she could occasionally lift 10 pounds or less, and would have to be absent from work more than 4 days a month (R. at 328).

On April 6, 2006, Dr. Lilly prepared a progress note regarding the plaintiff.  He set forth numerous medical problems. He stated that her drops in blood pressure from POTS leads to severe lightheadedness and black outs, with the possibility of transient seizure activity.  He indicated the spells are very disabling with dizziness, possibly passing out then followed by profound fatigue lasting for several hours to days.  He concluded by saying that plaintiff is totally disabled from any employment and has difficulty with her daily care.  He indicated her POTS is getting worse and is not expected to improve; her prognosis is poor (R. at 857).

The ALJ stated the following concerning the opinions of Dr. Lilly:

> The only medical opinions reflecting the
> claimant was unable to work were provided by

10

Dr. Lilly. Nonetheless other treating sources
found no physical limitations and medication~
were effective in April 2001 which was within
12 months of her alleged onset date of
disability. Dr. Lilly assessed disability in
May 2002 at a time when the claimant was
pregnant and not seeking out treatment for
her disabling symptoms. In December 2002 Dr.
Lilly's restrictions were contrary to the
findings of the consultative examination
which was negative for neurological
abnormalities in August 2002 and she was thus
found to have the full capacity to work and
only minimal degenerative disc disease of the
lumbar spine. Again in January 2004 Dr. Lilly
assessed restrictions when she was again
evaluated by a neurologist and found to have
a normal examination. In May 2004 Dr. Lilly
found restrictions but his treatment notes
suggest that he did not learn of her month
long episodes of when the symptoms of her
condition worsened until nine months later.
Outside evaluators ruled out MS and
determined a diagnosis and treatment for the
claimant. Although there are no treatment
records from Dr. Lilly during the time period
from October 2004 to November 2005, after she
was diagnosed with POTS in August 2005 and
treatment recommendations made by a
specialist in December 2005. He again,
without documentation of continued
professional contact with the claimant,
concluded she was totally disabled in March
2006.

The undersigned find's Dr. Lilly's opinions
to be inconsistent with his own treatment
notes as well as the other specialists who
have evaluated the claimant over time. He
certainly has been supportive and sympathetic
to the claimant but his restrictions have not
been supported by clinical findings and
laboratory and objective testing. Thus while
Dr. Lilly is a treating physician, whose
opinion is generally entitled to great
weight. the undersigned does not find his
opinions to be well-supported by medically
acceptable clinical and laboratory diagnostic

11

> techniques and are inconsistent with the
> other substantial evidence in the case
> record.

(R. at 404).

Plaintiff argues that the opinion of Dr. Lilly that
plaintiff is disabled is entitled to controlling weight (Doc. 6
at 18).  However, the opinion of a treating physician on an issue
reserved to the Commissioner, including whether a claimant is
disabled, is not entitled to controlling weight.  <u>Wade v. Astrue</u>,
2008 WL 193236 at *2 (10th Cir. Jan. 23, 2008).

Plaintiff argues that the ALJ erred by failing to specify
what weight, if any, the ALJ assigned to the opinions of Dr.
Lilly (Doc. 6 at 25), and also argues that the RFC findings are
not based on substantial evidence (Doc. 6 at 26).  When a medical
opinion is not entitled to controlling weight, the ALJ is still
required to specify what lesser weight, if any, should be
assigned to a treating physician's opinion, using the factors set
forth in 20 C.F.R. § 404.1527.  <u>Langley v. Barnhart</u>, 373 F.3d
1116, 1120, 1123 (10th Cir. 2004).  However, it is not clear from
the ALJ opinion what weight, if any, the ALJ accorded to the
opinions of Dr. Lilly.  The ALJ failed to explain why he appeared
to adopt some, but not all of Dr. Lilly's opinions regarding
plaintiff's limitations.

Some of the ALJ's RFC findings are similar to the RFC
opinions by Dr. Lilly.  In fact, defendant's brief states the

12

following:

> Plaintiff argues that the ALJ did not specifically state what weight he afforded to Dr. Lilly's opinion. See Pl.'s Br. at 25. **Although the ALJ did not make an explicit finding that he afforded Dr. Lilly's opinion for some weight, little weight, or no weight, it is implicit in his decision that Dr. Lilly's opinion was afforded some, but not substantial or controlling weight** (Tr. 404). For example, the ALJ's RFC determination was consistent with Dr. Lilly's January 26, 2004, Medical Source Statement with regard to standing/walking, lifting, climbing, balancing, kneeling, and stooping (Tr. 301-02, 407). The ALJ also imposed limitation on Plaintiff's ability to tolerate environmental conditions that were generally consistent with Dr. Lilly's Medical Source Statement (Tr. 302, 407). Thus, it is apparent that the ALJ did not simply dismiss Dr. Lilly's opinion where a number of the very same limitations were incorporated in his RFC determination. See e.g. Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006). Although the ALJ should have stated that he afforded some weight to Dr. Lilly's opinion, his failure to do so is simply a deficiency in opinion writing rather than a reason to reverse his decision. "The harmless error rule applies to judicial review of administrative proceedings, and errors in such administrative proceedings will not require reversal unless Plaintiffs can show they were prejudiced." Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993) (citation omitted).

(Doc. 12 at 7-8, emphasis added). Thus, defendant concedes that

the ALJ gave Dr. Lilly's opinions some weight, but not

substantial or controlling weight. However, for the reasons set

forth below, it was not harmless error for the ALJ to fail to set

13

forth what weight, if any, he gave to the opinions of Dr. Lilly, and more specifically, to fail to provide any explanation for why he apparently adopted some of his opinions, but not others.

An ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  The ALJ must provide an explanation of how he assessed the weight of the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004)(ALJ clearly gave Dr. Baca's opinions some weight, but failed to specify what lesser weight he assigned to his opinions).  In the case of Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007), the ALJ failed to explain his reasons for rejecting some of Dr. Rawlings restrictions, while implicitly adopting others. The court held that the ALJ should have explained why he rejected some of the restrictions given by Dr. Rawlings, while appearing to adopt others.  For this reason, the court remanded the case so that the ALJ could explain the evidentiary support for his RFC determination.  482 F.3d at 1208.

In the case of Wade v. Astrue, 2008 WL 193236 at *2 (10th Cir. Jan. 23, 2008), the ALJ made no findings whatsoever regarding the weight, if any, that she assigned to the opinions of Dr. Herndon.  The Commissioner conceded that the ALJ failed to make an explicit finding regarding Dr. Herndon's opinion, but argued that the ALJ's finding regarding the ultimate weight

14

assigned to the opinion is implicit, and that it appeared that
the ALJ's RFC determination gave Dr. Herndon's opinion some
credence.  However, the ALJ provided no such analysis.  The court
therefore remanded the case because it could not meaningfully
review the ALJ's determination absent findings explaining the
weight assigned to the treating physician's opinion.

In the case of Kency v. Barnhart, Case No. 03-1190-MLB (D.
Kan. Nov. 16, 2004, Doc. 21 at 7-9), the court found that the
ALJ's RFC findings were not entirely consistent with the opinions
of Dr. Sloo.  Although the ALJ found plaintiff's standing and
sitting limitations consistent with Dr. Sloo, the ALJ's RFC
assessment failed to include other limitations listed by Dr.
Sloo, and it was not at all clear to the court how the RFC, as a
whole, was derived.  The Commissioner argued that any failure by
the ALJ to make an express enumeration of the exact weight given
to Dr. Sloo's opinions was harmless error.  The court, noting
that harmless error is applicable only where no reasonable
factfinder, following the correct analysis, could have resolved
the factual matter in any other way, held that this was not such
a case.  It was not at all clear how the RFC, as a whole, was
derived, or why the ALJ adopted some of Dr. Sloo's restrictions,
but not others.  The court remanded the case for further hearing,
holding that the ALJ must explain how the decision was reached,
and how the ALJ analyzed the evidence.  The court indicated that

15

it will not reweigh the evidence to determine whether substantial evidence supports the ALJ's decision.

The problem with the findings of the ALJ in the case before the court (Maxson) is that the ALJ failed to indicate what weight, if any, he gave to the opinions of Dr. Lilly.  Defendant argues that the ALJ's RFC findings implicitly afforded weight to some, but not all of Dr. Lilly's opinions.  However, the ALJ offered no explanation for appearing to adopt some of Dr. Lilly's restrictions, but not others.  Therefore, this case must be remanded in order for the ALJ to indicate what lesser weight, if any, he assigned to Dr. Lilly's opinions, and the reasons for adopting some of Dr. Lilly's opinion but not others.  The ALJ shall describe how the evidence supports each of his RFC findings, citing to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184 at *7.  The ALJ must explain the evidentiary support for his RFC determination.  Haga, 482 F.3d at 1208.

## IV.  Did the ALJ err in his credibility analysis?

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and

16

not just a conclusion in the guise of findings.  Kepler v.
Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ
cannot ignore evidence favorable to the plaintiff.  Owen v.
Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence.  So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in Kepler.  White v.
Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel,
206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore
explain and support with substantial evidence which part(s) of
claimant's testimony he did not believe and why.  McGoffin v.
Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for
the ALJ to use standard boilerplate language which fails to set
forth the specific evidence the ALJ considered in determining
that a claimant's complaints were not credible.  Hardman v.
Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand,
an ALJ's credibility determination which does not rest on mere
boilerplate language, but which is linked to specific findings of
fact fairly derived from the record, will be affirmed by the
court.  White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its
judgment for that of the Commissioner.  Hackett v. Barnhart, 395

17

F.3d 1168, 1173 (10th Cir. 2005).  However, the ALJ's credibility findings are based, in part, on the medical evidence in this case (R. at 404-405).  Therefore, on remand, the ALJ shall make new credibility findings after clearly setting forth the weight that the ALJ is giving to the opinions of Dr. Lilly.  Also on remand, the plaintiff can present to the ALJ the arguments she raises in her brief regarding the ALJ's credibility findings, including those regarding the characterization of activities of daily living and pursuit of medical treatment.

In his decision, the ALJ states that "the evidence also establishes that she regained significant work capability within 12 months of her alleged onset of disability" (R. at 404).  However, the ALJ failed to cite to any evidence that would support such a statement.  In fact, Dr. Smith, plaintiff's treating physician, stated on July 23, 2001 (over 10 months after plaintiff's alleged onset date), that plaintiff "has continued episodes of profound fatigue, almost making her bedridden for 1-3 days" (R. at 298).  Dr. Smith also noted that plaintiff suffers from autonomic dysfunction with recent gastrointestinal associated symptoms, consisting of diffuse abdominal discomfort, nausea, vomiting, and diarrhea (R. at 298).  On remand, the ALJ shall be expected to provide evidentiary support, by specific citations to the record, for any credibility findings.

IT IS THEREFORE RECOMMENDED that the decision of the

Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on April 10, 2008.

                              s/John Thomas Reid
                              JOHN THOMAS REID
                              United States Magistrate Judge